# UNITED STATES DISTRICT COURT
# DISTRICT OF COLORADO

| | |
|---|---|
| TROY ZWIEFEL, individually and on behalf of all others similarly situated,<br><br>v.<br><br>MDL INNOVATIVE SERVICES, INC. | **Docket No. 1:19-cv-2335**<br><br>JURY TRIAL DEMANDED<br><br>FLSA COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b) |

## ORIGINAL COLLECTIVE ACTION COMPLAINT

### I.  Summary

1. Troy Zwiefel (Zwiefel) brings this lawsuit to recover unpaid overtime wages and other damages from MDL Innovative Services, Inc. (MDLI) under the Fair Labor Standards Act (FLSA). *See* 29 U.S.C. § 201 *et seq.*

2. Zwiefel and the other employees like him regularly worked for MDLI in excess of forty (40) hours each week.

3. But MDLI never paid these employees overtime for the hours worked in excess of forty (40) hours in a single workweek.

4. Instead of paying overtime as required by the FLSA, MDLI paid these employees a day rate with no overtime compensation.

5. This collective action seeks to recover the unpaid overtime wages and other damages owed to these workers.

### II.  Jurisdiction and Venue

6. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because Defendant MDLI maintains its headquarters in this District.

### III.   The Parties

8. Zwiefel worked for MDLI as a W-2 employee from approximately July 2017 until March 2018. Specifically, Zwiefel worked as a Welding Inspector. The exact dates that Zwiefel worked for MDLI are reflected in MDLI's records.

9. Throughout Zwiefel's employment with MDLI, MDLI paid him a day rate with no overtime compensation.

10. Zwiefel's consent to be a party is attached hereto as Exhibit A.

11. Zwiefel brings this action on behalf of himself and all other similarly situated workers who MDLI classified as W-2 employees and paid a day rate with no overtime compensation. MDLI paid each of these workers a flat amount for each day worked and failed to pay them overtime for all hours worked that they worked in excess of 40 hours in a single workweek in accordance with the FLSA.

12. The class of similarly situated employees or Putative Class Members sought to be certified is defined as follows:

> **All individuals working for, or on behalf of MDLI who were paid a day rate with no overtime at any time during the last three years ("Putative Class Members").**

13. MDLI is a Colorado corporation that can be served through its registered agent: **Mark William Lopez, 5310 Ward Road, Suite G07, Arvada, Colorado 80002, USA.**

### IV.   Coverage Under the FLSA

14. At all times hereinafter mentioned, MDLI has been an employer within the meaning of the Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

15. At all times hereinafter mentioned, MDLI has been part of an enterprise within the

meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

16. At all times hereinafter mentioned, MDLI has been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has and has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials—such as tools, cell phones, and personal protective equipment—that have been moved in or produced for commerce by any person and in that MDLI has had and has an annual gross volume of sales made or business done of not less than $500,000.00 (exclusive of excise taxes at the retail level which are separately stated).

17. At all times hereinafter mentioned, Zwiefel and the Putative Class Members were engaged in commerce or in the production of goods for commerce.

18. As will be shown through this litigation, MDLI misclassified Zwiefel and the Putative Class Members as exempt employees and uniformly subjected them to its illegal day rate pay practice, which deprived them of overtime in violation of the FLSA.

### V. Facts

19. MDLI provides services to the oil & gas and construction industries, "providing a full range of assistance including engineering, construction, and project management."[1]

20. To provide services to many of its customers, MDLI contracts with certain companies to provide them with engineering, construction, project management, and inspection personnel to perform their necessary work.

21. Many of these individuals worked for MDLI on a day rate basis and make up the Putative

---

[1] https://mdlinnovativeservices.com/about/ (last visited on August 6, 2019).

Class.

22. For example, Zwiefel worked for MDLI as a Welding Inspector during the relevant time period. Throughout his employment with MDLI, MDLI paid him a day rate with no overtime compensation.

23. While exact job titles and job duties may differ, MDLI subjects these employees to the same or similar illegal pay practices for similar work.

24. MDLI paid all of these employees a flat sum for each day worked, regardless of the number of hours that they worked that day (or in that workweek) and failed to provide them with overtime pay for hours that they worked in excess of forty (40) hours in a workweek.

25. Zwiefel and the Putative Class Members worked for MDLI under this pay scheme.

26. MDLI did not pay Zwiefel and the Putative Class Members a salary.

27. Rather, MDLI paid Zwiefel and the Putative Class Members a day rate.

28. If Zwiefel and the Putative Class Members did not work, MDLI did not pay them.

29. MDLI paid Zwiefel and the Putative Class Members the day rate regardless of the number of hours they worked, including those in excess of 40 hours in a single workweek.

30. MDLI did not pay Zwiefel and the Putative Class Members overtime compensation.

31. MDLI subjected Zwiefel and the Putative Class Members to the same or similar pay practices.

32. Zwiefel and the Putative Class Members regularly worked overtime for MDLI.

33. Zwiefel worked well in excess of 40 hours each week while employed by MDLI, often for weeks at time.

34. Indeed, MDLI regularly scheduled Zwiefel to work a minimum of 12-hour shifts, seven days a week, for weeks at a time.

35. As a Welding Inspector, Zwiefel's primary job duties included conducting well inspections for MDLI and/or its clients.

36. The work Zwiefel and the Putative Class Members performed was an essential part of MDLI's core business of providing engineering, construction, project management, and inspection services and personnel.

37. Indeed, MDLI and/or its client it contracted with controlled all of the significant or meaningful aspects of the job duties performed by Zwiefel.

38. MDLI requires its employees to adhere to strict guidelines and checklists to perform their job, as well as supervises its employees to ensure they are doing so.

39. MDLI ordered the hours and locations Zwiefel and the Putative Class Members worked, tools used, and rates of pay received.

40. MDLI directly determined Zwiefel and the Putative Class Members' opportunities for profit and loss. Zwiefel and the Putative Class Members' earning opportunities were based on the number of days MDLI scheduled them to work.

41. The daily and weekly activities of Zwiefel and the Putative Class Members were routine and largely governed by standardized plans, procedures, and checklists created by MDLI and/or its clients. Virtually every job function was pre-determined by MDLI and/or its clients, including the tools to use at a job site, the data to compile, the schedule of work, and related work duties. Zwiefel and the Putative Class Members were prohibited from varying their job duties outside of these pre-determined parameters.

42. Moreover, the job functions of Zwiefel and the Putative Class Members were primarily manual labor/technical in nature, requiring little to no official training, much less a college education or other advanced degree.

43. Zwiefel and the Putative Class Members did not possess any specialized or unique skill set.

44. MDLI did not require Zwiefel or Putative Class Members to have an advanced degree.

45. To the extent Zwiefel and the Putative Class Members made "decisions," such decisions did not require the exercise of independent discretion and judgment.

46. Instead, Zwiefel and the Putative Class Members applied well-established techniques and procedures and used established standards to evaluate any issues.

47. Zwiefel and the Putative Class Members did not set the techniques and procedures utilized to perform their job duties and did not set quality standards.

48. Zwiefel and the Putative Class Members were not allowed to deviate from the techniques and procedures utilized to perform their job duties or from any quality standards

49. At all relevant times, MDLI maintained control, oversight, and direction of Zwiefel and the Putative Class Members, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

50. Zwiefel and the Putative Class Members did not have the authority to hire and/or fire other MDLI employees or its clients' employees.

51. For the purposes of an FLSA overtime claim, the Putative Class Members performed substantially similar job duties.

52. All of the Putative Class Members perform the same or similar job duties and are subjected to the same or similar policies and procedures which dictate the day-to-day activities performed by each person.

53. The Putative Class Members also worked similar hours and were denied overtime as a result of the same illegal pay practice.

54. Based on the job duties they performed, Zwiefel and the Putative Class Members are clearly non-exempt employees under the FLSA.

55. MDLI knew Zwiefel and the Putative Class Members worked more than 40 hours in a week.

56. Indeed, MDLI required Zwiefel and the Putative Class Members to work substantial overtime without overtime compensation.

57. MDLI's policy of failing to pay their day rate employees, including Zwiefel, overtime violates the FLSA because these workers are, for all purposes, employees performing non-exempt job duties.

58. MDLI knew and knows these workers are not exempt from the FLSA's overtime provisions.

59. MDLI is well aware of the overtime requirements of the FLSA.

60. MDLI knew, or showed reckless disregard for whether, the conduct described in this Complaint violated the FLSA.

## VI.   FLSA Violations

61. As set forth herein, MDLI has violated, and is violating, Section 7 of the FLSA, 29 U.S.C. § 207, by employing employees in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA for workweeks longer than forty (40) hours without compensating such employees for their employment in excess of forty (40) hours per week at rates no less than 1 and ½ times the regular rates for which they were employed.

62. MDLI knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay the Putative Class Members overtime compensation. MDLI's failure to pay overtime compensation to these employees was neither reasonable, nor was the decision not to pay

overtime made in good faith.

63. Accordingly, Zwiefel and the Putative Class Members are entitled to overtime wages under the FLSA in an amount equal to 1 and ½ times their rate of pay, plus liquidated damages, and attorneys' fees and costs.

## VII. Collective Action Allegations

64. Zwiefel incorporates all previous paragraphs and alleges that the illegal pay practices MDLI imposed on Zwiefel were likewise imposed on the Putative Class Members.

65. MDLI victimized numerous individuals through this pattern, practice, and policy which is in willful violation of the FLSA.

66. Numerous other individuals who worked with Zwiefel indicated they were paid in the same manner, performed similar work, and were not properly compensated for all hours worked as required by state and federal wage laws.

67. Based on his experiences and tenure with MDLI, Zwiefel is aware that MDLI's illegal practices were likewise imposed on the Putative Class Members.

68. The Putative Class Members were all not afforded the overtime compensation when they worked in excess of 40 hours per week, but rather were paid a day rate.

69. MDLI's failure to pay wages and overtime compensation at the rates required by state and/or federal law result from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Putative Class Members.

70. Zwiefel's experiences are therefore typical of the experiences of the Putative Class Members.

71. The specific job titles or precise job locations of the various Putative Class Members do not prevent class or collective treatment.

72. Zwiefel has no interests contrary to, or in conflict with, the Putative Class Members. Like each Putative Class Member, Zwiefel has an interest in obtaining the unpaid overtime wages owed under state and/or federal law.

73. A collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

74. Absent this action, many Putative Class Members likely will not obtain redress of their injuries, and MDLI will reap the unjust benefits of violating the FLSA.

75. Furthermore, even if some of the Putative Class Members could afford individual litigation against MDLI, it would be unduly burdensome to the judicial system.

76. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the classes and provide for judicial consistency.

77. The questions of law and fact common to each of the Putative Class Members predominate over any questions affecting solely the individual members. Among the common questions of law and fact are:

    a. Whether MDLI employed the Putative Class Members within the meaning of the FLSA;

    b. Whether MDLI's decision to classify the Putative Class Members as exempt employees was made in good faith;

    c. Whether MDLI's decision to not pay overtime to the Putative Class Members at a rate of time and a half was made in good faith;

    d. Whether MDLI's violation of the FLSA was willful; and

    e. Whether MDLI's illegal pay practices were applied uniformly across the nation to all Putative Class Members.

78. Zwiefel's claims are typical of the claims of the Putative Class Members. Zwiefel and the Putative Class Members sustained damages arising out of MDLI's illegal and uniform employment policy.

79. Zwiefel knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective or class action.

80. Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude collective and class action treatment.

## VIII. Jury Demand

81. Zwiefel demands a trial by jury.

## IX. Relief Sought

82. WHEREFORE, Zwiefel prays for judgment against MDLI as follows:

   a. An Order designating the Putative Class as a collective action and permitting the issuance of a notice pursuant to 29 U.S.C. § 216(b) to all similarly situated individuals with instructions to permit them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b);

   b. For an Order pursuant to Section 16(b) of the FLSA finding MDLI liable for unpaid back wages due to Zwiefel and the Putative Class Members for liquidated damages equal in amount to their unpaid compensation;

   c. For an Order appointing Zwiefel and his counsel as Class Counsel to represent the interests of the Putative Class Members;

   d. For an Order awarding attorneys' fees, costs, and pre- and post-judgment interest; and

  e.  For an Order granting such other and further relief as may be necessary and appropriate.

          Respectfully submitted,

         By: */s/ Andrew W. Dunlap*
           **Michael A. Josephson**
           Texas Bar No. 24014780
           **Andrew W. Dunlap**
           Texas Bar No. 24078444
           **Taylor Jones**
           Texas Bar No. 24107823
           **JOSEPHSON DUNLAP LAW FIRM**
           11 Greenway Plaza, Suite 3050
           Houston, Texas 77046
           713-352-1100 – Telephone
           713-352-3300 – Facsimile
           mjosephson@mybackwages.com
           adunlap@mybackwages.com
           tjones@mybackwages.com

           **AND**

           **Richard J. (Rex) Burch**
           Texas Bar No. 24001807
           **BRUCKNER BURCH, P.L.L.C.**
           8 Greenway Plaza, Suite 1500
           Houston, Texas 77046
           713-877-8788 – Telephone
           713-877-8065 – Facsimile
           rburch@brucknerburch.com

          **ATTORNEYS IN CHARGE FOR PLAINTIFF**